**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

**EASTERN DIVISION**

| In re<br><br>ELLA L. EVERETT,<br><br>  Debtor | Chapter 13<br>Case No. 10-19457-FJB |
|---|---|

**MEMORANDUM OF DECISION ON
DEBTOR'S OBJECTION TO PROOF OF CLAIM OF DEUTSCHE BANK TRUST COMPANY,
DEUTSCHE BANK TRUST COMPANY'S OBJECTION TO CONFIRMATION OF
DEBTOR'S THIRD AMENDED CHAPTER 13 PLAN,
AND DEUTSCHE BANK TRUST COMPANY'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

This case is before the court on three related matters: the objection of chapter 13 debtor Ella L. Everett's (the "Debtor") to the proof of claim of Deutsche Bank Trust Company ("Deutsche Bank"), Deutsche Bank's objection to confirmation of the Debtor's third amended chapter 13 plan (the "Plan"), and Deutsche Bank's motion for relief from the automatic stay. The Debtor alleges that when her mortgage and note were transferred to Wells Fargo and subsequently to Deutsch Bank, these entities failed to credit payments to her account, improperly paid for insurance for one year, and improperly added fees and late charges to her mortgage. Therefore, she contends, the amount alleged to be in arrears on the mortgage pre-petition by Deutsche Bank is incorrect, as is the total amount alleged to be outstanding on the note and mortgage. Deutsche Bank defends the amounts in its proof of claim and objects to confirmation of the Debtor's Plan for grossly understating the extent of the arrearage it purports to cure. In support of its motion for relief from the automatic stay, Deutsche Bank argues that the Debtor has fallen some eight months further in arrears post-petition.

**Procedural History**

The Debtor filed her chapter 13 bankruptcy petition on August 31, 2010 to avert a foreclosure sale scheduled by Deutsche Bank for September 2, 2010. Deutsche Bank filed a timely proof of claim on September 9, 2010, which it amended on October 4, 2010. The Debtor filed an objection to Deutsche Bank's proof of claim, which, after conducting a preliminary hearing, the Court set down for an evidentiary hearing.

The Debtor filed the Plan on February 14, 2011. It proposed payments of $284 per month for 60 months. The plan proposed to cure the pre-petition arrearage on the mortgage held by Deutsche Bank, which arrearage it quantified at $14,697.00, and proposed a 100% dividend to unsecured creditors in the amount $589.03.[1] Deutsche Bank objected to the Plan on the basis that it failed to cure all of the outstanding pre-petition arrears per its filed proof of claim. The Court scheduled an evidentiary hearing on the objection to confirmation and consolidated it with the scheduled evidentiary hearing on the Debtor's objection to proof of claim.

While discovery was pending on these matters, Deutsche Bank filed the instant motion for relief from the automatic stay. After conducting a preliminary hearing, the Court determined an evidentiary hearing was necessary and added it to the evidentiary hearing on the other matters. An evidentiary hearing was held on January 5, 2012. At the close of the evidentiary hearing, the parties agreed to enter into mediation, which continued for approximately twelve months, but without success.[2] The Court then took the matters under advisement.

---

[1] The third amended plan was filed after the expiration of the deadline to file a proof of claim. After the Debtor's successful objection to the proof of claim filed by T-Mobile/T-Mobile USA Inc. and the withdrawal of the proof of claim filed by the Massachusetts Department of Revenue, the only remaining allowed unsecured claim is in the amount of $589.03.

[2] The Court understands that counsel for all parties and a highly skilled mediator, Richard Mikels, Esq., tried hard to resolve this matter for an extended period of time. It is truly regrettable that no agreement could be structured, but it is surely not for lack of great effort.

**Jurisdiction**

The matters before the Court are an objection to claim, an objection to confirmation of a chapter 13 plan, and a motion seeking relief from the automatic stay. All arise under the Bankruptcy Code[3] and in a bankruptcy case and therefore fall within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference,[4] referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). All are core proceedings within the meaning of 28 U.S.C. § 157(b)(1),[5] under which the bankruptcy court has authority to enter final orders on the matters.

**Findings of Fact**

The Debtor is an eight-five year old woman who has owned the property located at 682 Blue Hill Avenue, Dorchester, Massachusetts (the "Property") for more than fifty years. The Property has five units; the Debtor resides in one and rents the others. On November 15, 2004, she refinanced the Property in the amount of $270,000.00 with Mortgage Amenities Corporation with a fixed interest rate of 6.85% and a fixed monthly principal and interest payment in the amount of $1,769.20. The note and mortgage were subsequently assigned to Wells Fargo Bank, N.A. ("Wells Fargo").

On September 5, 2007, the Debtor and Wells Fargo agreed to and executed a loan modification agreement that modified the principal balance and changed the principal and interest payments to $1,853.21. At the time that the loan modification was executed, the parties agreed there were outstanding mortgage payments from April 1, 2007 through September 1, 2007. As of the date of the modification, the unpaid principal balance had been $263,366.12. With the modification agreement, the amount of interest to be capitalized was $10,523.67, resulting in a modified unpaid balance on the mortgage of $273,889.79. The loan modification agreement clearly stated that "except as otherwise

---

[3] See 11 U.S.C. §§ 501 (permitting the filing of proofs of claim), 502 (objections to proofs of claim), 1325 (objections to confirmation of chapter 13 plans), and 362(d) (relief from the automatic stay).
[4] The order of reference is codified in the district court's local rules at L.R. 201, D.Mass.
[5] See 28 U.S.C. § 157(b)(2)(B), (G), and (L) (core proceedings include the allowance or disallowance of claims against the estate; motions to terminate, annul, or modify the automatic stay; and confirmation of plans.

3

specifically provided in this Agreement, the Note and Mortgage will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement."

The parties are in agreement that at the origination of the note and mortgage, the Debtor was responsible for paying property insurance and real estate taxes directly.  Therefore, Wells Fargo did not initially create an escrow account.  The language of the mortgage does allow a lender to create an escrow account when a borrower fails to pay what are typical escrow items:  "If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amounts and Borrower shall then be obligated under Section 9 to repay to Lender any such amount."  "Escrow items" are defined in Section 3 of the mortgage as including "premiums for any and all insurance required by a lender under Section 5 of  the mortgage" and "taxes and assessments and other items which can attain priority over this "Security Instrument" (i.e. the mortgage) as a lien or encumbrance on the property."

On September 10, 2007, Tower National Insurance Company, the Debtor's property insurer, issued a Notice of Cancellation of Homeowners Policy to Wells Fargo.  Per the notice, the homeowners policy was due to be canceled on October 2, 2007 for nonpayment of the premium in the amount of $1,443.30.  Wells Fargo made a payment for property insurance in the amount of $355.00 that covered a period of October 2, 2007 through October 29, 2007; the payment was charged to the Debtor's mortgage on November 7, 2007.  Per the terms of the mortgage, Wells Fargo created an escrow account for property insurance.

Wells Fargo received a second notice of pending cancellation on December 9, 2007; the notice stated that cancellation of the homeowners insurance policy would take effect on December 25, 2007 because the insurer had not received a premium payment in the amount of $2,077.00 with a total amount due for the insurance premium in the amount of $4,157.00.  Wells Fargo disbursed $4,512.00

4

for the homeowners insurance and added it to outstanding amounts in the escrow account on March 20, 2008.  The homeowners insurance covered the Property from December 25, 2007 to December 25, 2008.  Wells Fargo received a refund of $284.00, which was credited to the Debtor's escrow account, on December 26, 2008 as Wells Fargo received evidence that the Debtor had purchased a new policy on December 1, 2008 which overlapped with the policy purchased the prior year by Wells Fargo.

In testimony, the Debtor disputed that she had allowed the property insurance to lapse. As evidence of her practice of purchasing homeowners insurance for the Property, she produced copies of several insurance binders whose coverage periods both pre-dated December 1, 2007 and post-dated December 1, 2008.  She failed, however, to produce evidence that she had purchased coverage for the time period of December 1, 2007 through December 1, 2008.  Based on the language of the mortgage and the evidence, I find that Wells Fargo properly created an escrow account and paid the premium for the homeowners insurance.

Wells Fargo also made payments to the City of Boston for alleged outstanding real estate taxes. Wells Fargo made seven payments from December 2008 through July 2010 to the City of Boston totaling $2,943.18.  The Debtor testified that she never missed a payment on her real estate taxes and consistently received abatements from the City of Boston; however, she failed to produce any canceled checks or receipts demonstrating that she also paid taxes over the same time period.  I find that Wells Fargo, in accordance with the terms of the mortgage, paid real estate taxes to the City of Boston and included those advances in the escrow account for the Debtor's mortgage.

On May 4, 2009, Wells Fargo transferred the mortgage to Deutsche Bank, as evidenced by an "Assignment of Mortgage" recorded in the Suffolk Registry of Deeds and attached to the filed proof of claim.  Wells Fargo remained the servicer on the mortgage for Deutsche Bank.

After the parties entered into the loan modification agreement, the Debtor again fell behind in her monthly mortgage payments.  The parties stipulated that from November 1, 2007 through the filing

5

of the Chapter 13 petition on August 31, 2010, the Debtor made fourteen mortgage payments. There was one additional payment that she made in the amount of $1,000 on July 31, 2008, allegedly by money order. Wells Fargo has no record of ever receiving the money order. Wells Fargo, as servicer and on behalf of Deutsche Bank, commenced foreclosure proceedings because the Debtor was behind on her mortgage payments. In January 2010, Wells Fargo returned the mortgage payment that the Debtor had made that month as foreclosure proceedings had commenced and the payment proffered did not satisfy the outstanding mortgage arrears. The Debtor filed a complaint with the Massachusetts Commission Against Discrimination, and on or about April 8. 2010, she filed a Verified Complaint and Application for Preliminary Injunction and Temporary Restraining Order against Wells Fargo and Deutsche Bank with the Suffolk County Superior Court. The preliminary injunction was initially granted, and then on July 22, 2010 the Suffolk County Superior Court denied the Debtor's request for a permanent injunction. The foreclosure process continued, and a foreclosure sale was scheduled for September 2, 2010.

At the evidentiary hearing, the parties stipulated that the Debtor was contractually due post-petition on her mortgage for May 2011, meaning that she was then some eight months in arrears on mortgage payments that had come due since the filing of her bankruptcy petition. The parties also stipulated that there was a balance in the suspense account of $479.26. The parties also stipulated that there was equity in the Property.

**Discussion**

a. **Debtor's Objection to Proof of Claim of Deutsche Bank Trust Company**

   (i)    **Positions of the Parties**

The Debtor objects to Deutsche Bank's proof of claim and requests that I determine the correct amount of the claim. Specifically, the Debtor, during closing arguments, challenged the following amounts included in the proof of claim:

6

| | |
|---|---|
| Principal | $267,543.90 |
| Outstanding Pre-Petition mortgage payments totaling[6] | $ 46,248.20 |
| Legal Fee and Costs | $ 17,546.60 |
| Suspense Balance | $ (1,633.00) |
| Property Inspections/Preservation | $     285.00 |
| Accrued Late Fees | $     492.23 |
| Appraisal/BPO Fee | $     285.00 |
| NSF Fees | $       21.00 |
| Post-Petition Pre-Confirmation Legal Fees and Costs | $     300.00 |
| Total Pre-Petition Arrears | $ 63,545.03 |

The Debtor argued that the correct amount for "Principal" is approximately $250,000.00. As for the "Outstanding Pre-Petition mortgage payments," the Debtor argued that the monthly mortgage payment of $3,380.10 for the period of March 1, 2009 to October 1, 2009 was incorrect because Wells Fargo improperly created an escrow account for property insurance and real estate taxes. The Debtor argued that the "Legal Fees and Cost," including the "Post-Petition Pre-Confirmation Legal Fees and Costs," as calculated by Deutsche Bank were unreasonable and unnecessary. As for the Suspense Balance, the Debtor argued that this amount reflected the amount of the last payment that she made. She also argued that the expenses for "Property Inspections/Preservation" and "Appraisal/BPO Fee" were unnecessary as she still lived in the Property. The Debtor disputed the alleged late fees as unreasonable because she argued they only accrued due to Deutsche Bank's inability to properly credit her monthly mortgage payments and Wells Fargo's mismanagement of her account when it created an escrow account. She argued that the "NSF [not sufficient funds] Fee" was undocumented by the Deutsche Bank, so she does not know to which of her payments it applied. Finally, she argued that the total alleged for pre-petition arrears of $63,545.03 was incorrect; instead, she estimates the total prepetition arrears to be $14,697.00, which she arrives at by multiplying what the Debtor believes is the current monthly payments of $1,633.00 by nine (9) months.

---

[6] This total includes eight (8) payments each in the amount of $3,380.10 (3/1/2009-10/1/2009) and ten (10) payments each in the amount of $1,920.74 (11/1/2009-8/1/2010). This total also takes into account "Escrow Advances" made by Wells Fargo for property insurance and real estate taxes in the amount of $5,757.87.

Deutsche Bank countered that it filed its proof of claim in compliance with Bankruptcy Rule 3001, and therefore the proof of claim constitutes prima facie evidence of the validity and the amount of the claim.  Deutsche Bank argues that it has properly credited all mortgage payments received from the Debtor to her mortgage and has appropriately made disbursements when necessary for property insurance and real estate taxes.

**(ii) Analysis**

Pursuant to Fed. R. Bankr. P. 3001(f), "[a] proof of claim executed and filed in accordance with these rules [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f).  See also *In re Hayes*, 393 B.R. 259, 269 (Bankr. D. Mass. 2008); *Juniper Dev. Group v. Kohn (In re Hemingway Transp., Inc.),* 993 F.2d 915, 925 (1st Cir. 1993).  In order to rebut the prima facie evidence of a properly filed proof of claim, the objecting party must produce "substantial evidence."  If the objecting party produces "substantial evidence," then the burden shifts to the claimant to establish the validity of its claim.  *Hayes,* 393 B.R. at 269.  *See In re Long*, 353 B.R. 1, 13 (Bankr. D. Mass. 2006).  *See also United States v. Clifford (In re Clifford)*, 255 B.R. 258, 262 (D. Mass. 2000).

Deutsche Bank's proof of claim was timely filed on September 9, 2010 and amended on October 4, 2010.  The proof of claim satisfies Rule 3001 as it includes a copy of the note, the mortgage, and assignments of the mortgage.  Therefore, I find that Deutsche Bank's proof of claim constitutes prima facie evidence of the validity and the amount of the claim.  With this finding, the burden shifts to the Debtor to produce "substantial evidence" that the claim is not valid or the amount incorrect.  "The burden is on a party who objects to the proof of claim to come forward with evidence to overcome the prima facie validity of the claim."  *In re Holland*, 374 B.R. (Bankr. D. Mass. 2007).  "Substantial evidence" is "evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."  *In re Alleghany International, Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1991).

8

The Debtor argues that the amount of the claim is incorrect and therefore would have me determine the correct amount of Deutsche Bank's claim under 11 U.S.C. § 502(a). "Section 502(b) provides that if such an objection is made, 'the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount.'" *Hann v. Educational Credit Management Corporation* (*In re Hann*), 476 B.R. 344, 354 (BAP 1st Cir. 2012).

In closing arguments, the Debtor challenged the amount alleged by Deutsche Bank for the principal outstanding on the mortgage, $267,543.90. The Debtor suggested that the correct amount for principal should be approximately $250,000.00. The Debtor argued that as she had been making mortgage payments since the inception of the mortgage in 2004, and therefore the outstanding principal balance should be lower. She did not address the fact that in September 2007, she entered into a loan modification agreement with Wells Fargo that capitalized outstanding monies owed and added that amount to the unpaid principal balance at the time, resulting in a new principal balance of $273,889.79. During cross-examination, the Debtor appeared confused about whether the loan modification in 2007 had gone through. In the Joint Statement of Facts submitted through the Joint Pre-Trial Memorandum, the parties stated that a loan modification agreement had been executed in September 2007. Additionally, a copy of the executed loan modification agreement was admitted into evidence, and the Debtor admitted in testimony that it was her signature on the loan modification agreement. Therefore, I find that the parties did enter into a loan modification agreement in September 2007 and that the modified principal balance on the mortgage was $273,889.79.

Beginning with a principal balance of $273,889.79, the Debtor still alleged that Wells Fargo had not properly credited her payments to the mortgage. The parties admitted into evidence a list of all payments that Deutsche Bank had received since the loan modification in September 2007 through August 31, 2010, the petition date. The parties agreed that Deutsche Bank had applied fourteen (14)

9

payments to the Debtor's mortgage. Five of the mortgage payments were made by Citizens Bank official bank checks and the remaining nine were made through wire transfers. By my count, thirty-four (34) mortgage payments should have been submitted during that same time period; therefore, there are twenty (20) outstanding mortgage payments that Deutsche Bank did not receive. The Debtor admitted into evidence a copy of a single payment, a money order from Citizens Bank, to Wells Fargo dated July 31, 2008 in the amount of $1,000.00. Per the proof of claim, the mortgage payment at that time was $3,380.00. This payment was never applied to the Debtor's mortgage because Deutsche Bank stated through affidavit that it had no record of receiving the money order; and despite requests to the Debtor to obtain a back copy of the money order from Citizens Bank to verify if the money order had been deposited by Deutsche Bank, nothing was ever produced. On cross examination the Debtor stated that the money order was for late charges. There is no evidence of how she delivered the money order to Deutsche Bank as she was never asked; nor does her affidavit address a method of delivery. "The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427, 430; 52 S.Ct. 417, 419 (1932). For lack of evidence as to how the money order was delivered to Deutsche Bank, I cannot find that the money order was delivered to Deutsche Bank or that Deutsche Bank received and misapplied the funds. Therefore, I cannot credit the Debtor with this payment.

The Debtor did not produce evidence of any other payments not applied to her mortgage. She did not produce bank statements, copies of other money orders, or copies of receipts for other wire transfers. Even through testimony, she provided no additional information regarding other payments that she had tendered to Deutsche Bank but that Deutsche Bank had not been applied to her mortgage. The Debtor has fallen well short of meeting her burden of "substantial evidence" to rebut the

presumption that the amount of $267,543.90 alleged by Deutsche Bank for the principal balance due on the mortgage is incorrect.  Therefore, I find that the unpaid principal balance is $267,543.90.

The Debtor also challenged the creation of the escrow account, which, per the proof of claim, showed escrow advances of $5,757.87.  The representative for Deutsche Bank explained that escrow advances are those monies that were paid out by the lender for property insurance and real estate taxes that had not yet been collected from a borrower, and they reflected advances for the entire life of the loan.  In testimony, the Debtor stated that she always paid the property insurance directly.  She disputed that she had allowed the property insurance to lapse in October 2007 and then again in December 2007.  As evidence of her practice of purchasing homeowners insurance for the Property, she produced copies of several insurance binders that both pre-dated December 1, 2007 and post-dated December 1, 2008.  She failed however to produce evidence indicating that she had purchased a separate homeowners insurance policy for the time period of December 1, 2007 through December 1, 2008.

As for the portion of the escrow advances for real estate taxes, I heard testimony from the Debtor that she had always paid her own real estate taxes.  I also heard testimony from Mr. Robert Fuller, a self-employed tax preparer, who had prepared the Debtor's tax returns off and on for the last ten or eleven years.  According to the evidence of Deutsche Bank, it had paid real estate taxes to the City of Boston on several occasions beginning in December 2008 and continuing through July 2010, totaling $2,943.18.  When asked about the time period in which Deutsche Bank made real estate tax payments, Mr. Fuller testified that he had accompanied the Debtor to Boston's City Hall to retrieve tax statements reflecting the Debtor's payment history for the real estate taxes from 2006 through 2010.  He could not recall who paid the real estate taxes in 2008.  The Debtor also testified that she made all of the real estate tax payments during that same time period.  The Debtor did not produce copies of any of the tax statements or copies of canceled checks for the real estate taxes.

The language of the mortgage allows the lender to create an escrow account when a borrower fails to pay what are typical escrow items: "If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amounts and Borrower shall then be obligated under Section 9 to repay to Lender any such amount." Escrow items, under the terms of the mortgage, include both property insurance and real estate taxes. I find that the Debtor has failed to produce evidence that she had property insurance from December 1, 2007 through December 1, 2008 or that she had paid all of her real estate taxes from December 2008 through July 2010. Therefore, Wells Fargo complied with the terms of the mortgage when it paid for property insurance and outstanding real estate taxes.

The Debtor also objected to the amounts alleged for inspection fees and attorneys' fees as being unreasonable. The only testimony regarding these items came from the representative of Deutsche Bank. He testified that the Property Inspections/Preservation fees are for monthly inspections of a property once a loan goes into default. Under the terms of the mortgage, those fees are charged to the loan. As for the Attorneys' Fees, they are amounts that were incurred by Deutsche Bank for the foreclosure proceeding or bankruptcy proceedings, and they, too, are charged to the loan per the terms of the mortgage. The mortgage states:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including but not limited to, attorneys' fees, property inspection and valuation fees.

Exhibit A, Mortgage, Paragraph 14. As I have already found that the Debtor was behind in her mortgage payments, Deutsche Bank was within its rights under the terms of the mortgage to charge these fees to the Debtor's loan and include them in its proof of claim. While the Debtor argued in closing arguments that these were unreasonable, she produced no evidence to support her argument. I find that the fees in the proof of claim for Legal Fee and Costs, Post-Petition Pre-Confirmation Legal Fees and Costs, and Property Inspections/Preservation are reasonable and in compliance with the terms of the mortgage.

As for the Debtor's challenge to the amounts included in the proof of claim for Accrued Late Fees, NSF Fees, Appraisal/BPO Fees, and Suspense Balance, the Debtor offered no testimony or evidence that these were unreasonable or did not comply with the terms of the mortgage. Her objections to these line items came out for the first time during closing arguments. As I have no evidence other than the proof of claim, I find that the Debtor failed to produce substantial evidence that the amounts alleged are not correct.

I find that the Debtor has failed to produce substantial evidence to rebut the prima facie evidence that the Deutsche Bank proof of claim is correct. Therefore, the Debtor's objection to proof of claim is overruled. Deutsche Bank has an allowed secured claim in the amount of $319,495.05, with pre-petition arrears in the amount of $63,545.03.

**b.     Deutsche Bank's Objection to Confirmation of Plan**

Deutsche Bank argues that the Plan fails to provide for payment of its entire pre-petition arrearage of $63,495.03, as the plan only proposes to cure pre-petition arrears in the amount of $14,697.00. As set forth above, the Debtor defends her position as to the amount of the arrearage, but she does not dispute that failure to provide for a full cure of the arrearage is cause to deny confirmation.

I have determined that Deutsche Bank has an allowed secured claim in the amount of $319,495.05, including pre-petition arrears in the amount of $63,545.03. Pursuant to 11 U.S.C. § 1322(b)(5), a plan may "provide for the curing of any default." A debtor taking advantage of this option must cure the whole default. This plan fails to do so and therefore may not be confirmed. The objection to confirmation is accordingly sustained.

**c.     Deutsche Bank's Motion for Relief from the Automatic Stay**

Deutsche Bank moved for relief from the automatic stay under subsections (d)(1) and (d)(2) of 11 U.S.C. § 362. At the outset of the evidentiary hearing, however, the parties stipulated that the

Debtor had equity in the Property, and Deutsche Bank accordingly indicated that it was no longer seeking relief from the automatic stay under subsection (d)(2).  Rather, it is relying on its argument that relief from stay is warranted "for cause" under 11 U.S.C. §362(d)(1), the cause being failure to make some eight payments that came due postpetition.  The parties further stipulated that the mortgage held by Deutsche Bank is due for the post-petition mortgage payment for May 2011, a post-petition arearage of eight months, and that there is a balance in the suspense account of $479.26.

Section 362(d)(1) provides in relevant part:  "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1)  for cause, including the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. § 362(d)(1).  "The moving party has the initial burden to demonstrate . . . cause under 11 U.S.C. § 362(d)(1)," *In re Lopez*, 446 B.R. 12, 20 (Bankr. D. Mass. 2011), but the party opposing relief from the stay bears the ultimate burden of proof.  11 U.S.C. § 362(g)(2); *In re Ledis*, 259 B.R. 472, 475 (Bankr. D. Mass. 2001).

The parties have stipulated that the Debtor is in arrears post-petition by at least eight (8) monthly mortgage payments.  Having chosen to file plans in this case under which she would cure the arrears to Deutsche Bank and maintain her usual monthly payments while the case is pending, as expressly permitted by 11 U.S.C. § 1322(b)(5) ("the plan may . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due"), it was incumbent on the Debtor to continue making her mortgage payments postpetition, while the case was pending.  Where she has now fallen some eight months in arrears, I find that Deutsche Bank has met its initial burden of establishing there is cause to grant relief from stay.  The Debtor explains that she has been experiencing financial hardship, but she offers no reason to believe the

14

postpetition arrearage will be cured soon.  Therefore, I find that there is cause to grant Deutsche Bank's motion for relief from stay.

**Conclusion**

For the reasons set forth above, the court will, by separate orders, overrule the Debtor's objection to Deutsche Bank's proof of claim, sustain Deutsche Bank's objection to Debtor's third amended chapter 13 plan, and grant Deutsche Bank's motion for relief from automatic stay.

Date:  July 15, 2013                                   _____
                                                       Frank J. Bailey
                                                       United States Bankruptcy Judge